**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:17-cr-336-1 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | CHIEF JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| DAUNTEZ D. BELL, | ) | |
| | ) | |
| | ) | |
| DEFENDANT. | ) | |

On June 20, 2018, defendant Dauntez D. Bell ("defendant" or "Bell") was sentenced to an agreed upon, below guideline custody term of 216 months for conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 846. (Doc. No. 57 (Judgment), at 2; *see* Minutes of Proceedings [non-document], 6/20/2018; *see also* Doc. No. 29 (Superseding Indictment).) The sentence was imposed in accordance with a Rule 11(c)(1)(C) plea agreement. (*See* Doc. No. 42 (Plea Agreement).)

Now before the Court is Bell's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). (Doc. No. 76 (Motion).) Appointed counsel filed a notice indicating that he would not be supplementing defendant's *pro se* motion (Doc. No. 78 (Notice)), and plaintiff United States of America (the "government") filed an opposition to the motion. (Doc. No. 81 (Response).)  For the reasons that follow, Bell's motion for compassionate release is denied.

## I.     LAW AND DISCUSSION

The sentencing court has no inherent authority to reconsider and/or modify an otherwise valid sentence. *United States v. Washington*, 584 F.3d 693, 700 (6th Cir. 2009). Instead, the authority of the Court to resentence a defendant is limited by statute. *United States v. Houston*, 529 F.3d 743, 748–49 (6th Cir. 2008) (citing *United States v. Ross*, 245 F.3d 577, 585 (6th Cir. 2001)); *see United States v. Alexander*, 951 F.3d 706, 707 (6th Cir. 2019) ("Generally speaking, once a court has imposed a sentence, it does not have the authority to change or modify that sentence unless such authority is expressly granted by statute.") Under 18 U.S.C. § 3582(c), a court may only modify a term of imprisonment under the following circumstances: (1) upon a motion of the Director of the Bureau of Prisons ("BOP") or defendant for compassionate release; (2) as expressly permitted by statute or by Fed. R. Crim. P. 35; or (3) where a defendant has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission. § 3582(c)(1)–(2).

Bell does not seek relief under Rule 35, nor does he claim that he was sentenced to a term of imprisonment based on a sentencing range that was subsequently lowered. Instead, he is seeking relief from his sentence under the compassionate release statute. Under § 3582(c)(1)(A), a district court may grant a sentence reduction "only if it finds that the defendant satisfies three requirements: (1) 'extraordinary and compelling reasons warrant such a reduction'; (2) the 'reduction is consistent with applicable policy statements issued by the Sentencing Commission'; and (3) the relevant § 3553(a) factors support the reduction." *United States v. Hunter*, 12 F.4th 555, 561 (6th Cir. 2021) (quoting § 3582(c)(1)(A)(i); *United States v Elias*, 984 F.3d 516, 518 (6th Cir. 2021)); *see United States v. Jones*, 980 F.3d 1098, 1101 (6th Cir. 2020). Additionally,

2

exhaustion of administrative remedies is a mandatory claims-processing rule that must be satisfied before a defendant may seek compassionate release. *United States v. Alam*, 960 F.3d 831, 833–34 (6th Cir. 2020) (citations omitted).

The policy statement applicable to compassionate release motions, U.S.S.G. § 1B1.13, was amended, effective November 1, 2023, and describes six categories of extraordinary and compelling reasons that individually, or in combination, may support a request for compassionate release. These categories are: (1) medical circumstances of the defendant; (2) the age of the defendant; (3) a defendant's family circumstances; (4) sexual or physical abuse suffered by the defendant while in custody involving a "sexual act" or "serious bodily injury"; (5) "other reasons" similar in gravity as those articulated in (1)–(4); and (6) an "unusually long sentence." U.S.S.G. § 1B1.13(b).

The government agrees that Bell has exhausted his administrative remedies. (Doc. No. 81, at 4, Ex. A (Bureau of Prisons ["BOP"] Request and Denial).) Accordingly, the Court turns to a consideration of whether defendant has demonstrated the existence of extraordinary and compelling reasons identified in § 3582(c)(1)(A)(i), and discussed in detail in § 1B1.13(b), as amended. The Court finds that Bell has failed to meet this burden, and the motion for compassionate release must be denied for this reason alone. *See United States v. Williams*, 458 F. Supp. 3d 939, 943 (W.D. Tenn. 2020) ("The defendant bears the burden of showing he . . . is entitled to compassionate release." (citations omitted)).

### A.  Medical Circumstances of the Defendant § 1B1.13(b)(1))

Citing to the first category under the policy statement—medical circumstances of the defendant—Bell represents (without supporting documentation) that he "suffers from multiple

chronic conditions that remain inadequately treated" in prison, including: chronic knee pain, perforated right eardrum, and soft tissue swelling and eye pain. (Doc. No. 76, at 3.) He also claims (again without support) that prison medical staff have not effectively managed his pain with medications, and have not provided proper medical evaluations and access to medical care. (*Id.*) In conclusory fashion, he claims that the prison's failure to adequately treat his medical conditions has "substantially diminish[ed his] ability to care for himself in prison." (*Id.*)

Under § 1B1.13(b)(1)(A), a defendant's own medical condition (or conditions) may satisfy the extraordinary and compelling threshold if the defendant has a "terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory)."[1] A defendant may also make a sufficient showing if he demonstrates he suffers from a "serious physical or medical condition," a "serious functional or cognitive impairment," or is experiencing "deteriorating physical or mental health" because of age that "substantially diminishes the ability of the defendant to provide self-care" in his facility and "from which he . . . is not expected to recover." § 1B1.13(b)(1)(B). Finally, a defendant may qualify for relief if he is "suffering from a medical condition that requires long-term care or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." § 1B1.13(b)(1)(C).

Bell does not demonstrate that he suffers from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory)[.]" § 1B1.13(b)(1)(A). Further, prison medical records supplied by the government demonstrate that Bell receives appropriate medical attention

---

[1] Under § 1B1.13(b)(1)(A), a "terminal illness" does not require a "specific prognosis of life expectancy (i.e., a probability of death within a specific time period)[.]" The policy statement provides the following examples of a "terminal illness": "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." (*Id.*)

for his numerous, non-terminal, medical conditions. (Doc. No. 81, Ex. D (2024 Sealed Medical Records); Ex. E (2025 Sealed Medical Records).) He has received a colonoscopy to address his polyps, assessment for his ganglion cyst on his wrist, specialists' evaluations, and timely physical exams. (*See id.*, Ex. D; Ex. E.) These records further show that Bell receives regular laboratory testing and prescription and over-the-counter medications. (*See id.*) Moreover, contrary to Bell's unsubstantiated representations, the medical records indicate that Bell's health conditions are well controlled in the prison setting. As the government notes, in his October 2024 medical evaluation, the physician reported that Bell was a "well-developed, well-nourished black male in no acute distress." (*See id.*, Ex. D.) Indeed, by his own account, Bell is able to engage in intensive cardio exercise that requires significant physical strength and energy to complete. (*See id.*, Ex. E.) Ultimately, the Court finds that his medical conditions (separately or in combination) do not establish the existence of extraordinary and compelling reasons for a sentence reduction.

B. **Family Circumstance of the Defendant (§ 1B1.13(b)(3))**

Bell's second identified reason—family circumstances of the defendant—also fails to meet the threshold requirement for compassionate release. Section 1B1.13(b)(3)(A) provides that the "death or incapacitation of the caregiver of the defendant's minor child" may establish an extraordinary and compelling reason. Bell represents that he has four minor children who have been "negatively impacted" by his absence from their lives (*see* Doc. No. 76, at 3), but he has failed to demonstrate his children's caregiver has died or is otherwise incapacitated as required by § 1B1.13(b)(3)(A). Though commendable, his wish to "reintegrate into his family and provide much-needed support" for his children (*see id.* at 3), does not establish the existence of an extraordinary or compelling reason for early release. *See United States v. Jordan*, No. 17-cr-20593,

2020 WL 6060647, at *2 (E.D. Mich. Oct. 14, 2020 (Defendant's "desire to go home to be with his children and start a new job bodes well for his future, but it [] is not unique or extraordinary" (collecting cases)).

Similarly, Bell has failed to satisfy § 1B1.13(b)(3)(C), which provides that the "incapacitation" of the defendant's parent may qualify as an extraordinary and compelling reason for early release where "the defendant would be the only available caregiver for the parent." Bell represents that he has an "[a]ging [m]other[,]" who "struggles financially and emotionally without his support." (Doc. No. 76, at 3.) His desire to provide financial and emotional support for his mother does not meet the policy statement's definition of "extraordinary and compelling reasons" for early release. Bell has not alleged—let alone established—that his mother requires a caregiver, or, if she does require such support, that he is the "only available caregiver" for his mother. He has, therefore, failed to demonstrate an extraordinary and compelling reason under § 1B1.13(b)(3).

C. **Rehabilitation and Low Risk of Recidivism**

Bell also points to his post-conviction rehabilitation. He represents that he completed "significant" programming in prison, including earning his GED and successfully completing substance abuse and cognitive behavior training programs. (Doc. No. 76, at 4.) He insists that his "record"—which he does not supply to the Court—"demonstrates personal growth and a low risk of recidivism." (*Id.*)

The government concedes that Bell has successfully completed numerous classes while incarcerated, and it has provided the Court with the relevant documentation. (*See* Doc. No. 81, Ex. G (BOP Education Data).) While rehabilitative efforts may be considered alongside other qualifying circumstances, they cannot serve as the foundation for relief under § 3582(c)(1)(A) or

6

U.S.S.G. § 1B1.13. *United States v. Bass*, 17 F.4th 629, 637 (6th Cir. 2021) (citation omitted); *see* 28 U.S.C. § 994(t) ("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."). Although Bell's rehabilitative efforts are commendable, "good behavior and self-improvement are expected of federal inmates." *United States v. Moore*, No. 2:15-cr-96, 2025 WL 1762098, at *4 (E.D. Tenn. June 25, 2025) (citing, among authority, *United States v. Hymes*, 19 F.4th 928, 934 (6th Cir. 2021)). In the absence of any other reasons that could contribute to a finding of an extraordinary and compelling reason, Bell's rehabilitative efforts cannot meet the initial threshold requirement.

Moreover, Bell's claim of low recidivism (which is also not an enumerated category of extraordinary and compelling reason for release under the applicable policy statement) is not supported by the record. BOP disciplinary records supplied by the government demonstrate that Bell has multiple disciplinary infractions, including recent rule violations. (Doc. No. 81, Ex. F (BOP Disciplinary Records).) Most disturbing, Bell has admitted to repeatedly using and possessing illegal narcotics and other intoxicants in his facility. (*Id*.) His inability to follow the institutional rules is inconsistent with a low rate of recidivism, especially given the nature of his underlying drug offense.

### D. **Unusually Long Sentence (§ 1B1.13(b)(6))**

Under § 1B1.13(b)(6), if a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law may, in certain circumstances, be considered in determining the existence of extraordinary and compelling reasons. Even if Bell had served 10 years of his imprisonment term, he would not otherwise satisfy the sixth category of extraordinary and compelling reasons.

7

Bell cites generally to "evolving case law" surrounding the career offender enhancement, Amendment 821 to the federal sentencing guidelines, and sentences imposed following the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005). (Doc. No. 76, at 4.)[2] He fails to explain how *any* changes in the law subsequent to his sentencing would have impacted his custody term were he sentenced today. Moreover, the governing policy statement is clear that "a change in the law (including an amendment to the Guidelines Manual that has not be made retroactive) shall not be considered for purposes of determining whether the defendant presents an extraordinary and compelling reason," unless such a change would have resulted in a "gross disparity between the sentence being served" and a sentence that would have been imposed at the time the motion was filed. § 1B1.13(c). Bell has failed to demonstrate that he falls within the exception under § 1B1.13(c).

Likewise, Bell is not eligible for relief under Amendment 821. Part A, relating to "status points," is inapplicable because he was not under a criminal justice sentence at the time the present offense was committed and he, therefore, would have received no "status points." Bell also does not qualify under Part B, which provides relief for certain individuals with zero criminal history points (i.e., "zero point" offenders). Because Bell was properly classified as a career offender (resulting in a criminal history category of VI), he is not entitled to a sentence reduction under Part B of the Amendment. (*See also* Doc. No. 52 (Presentence Investigation Report ["PSR"]) ¶ 54.)

---

[2] Bell was sentenced years after the Supreme Court's ruling in *Booker, supra*, and he has failed to identify any evidence regarding sentencing disparities in comparable cases.

**E. Other Reasons (§ 1B1.13(b)(5))**

Bell also raises several "safety concerns" regarding his current incarceration. He notes that he was involved in a "use-of-force" incident, and complains he was placed in the special housing unit ("SHU"). He also vaguely maintains that "[p]rolonged lockdowns and limited medical access have exacerbated his medical issues." (Doc. No. 76, at 5.) Under the "catchall all" provision found at § 1B1.13(b)(5), a defendant can demonstrate extraordinary and compelling reasons if he can present "any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described" elsewhere in the policy statement, "are similar in gravity to those described" in the policy statement.

Beginning with the aforementioned "use-of-force" incident, the government has provided medical records that make reference to an incident occurring on December 1, 2020, when officers were required to employ force to subdue Bell. (Doc. No. 81, Ex. B (Medical Records).) These records provide that Bell's injuries were mild, limited to contusions and abrasions. (*Id*.) The government represents that Bell may have been involved in a second "use-of-force" incident on November 13, 2021, after Bell reported that he "got in trouble," but denied sustaining any injuries. (*Id*., Ex. C.) These isolated incidents, which appear to have been prompted by Bell's own misconduct, did not result in serious injuries and do not demonstrate an ongoing threat to Bell's safety or well-being. Likewise, Bell's vague concerns regarding placement in SHU or frequent lock-downs do not rise to the level of one of the enumerated categories of extraordinary and compelling reasons under the policy statement. *See, e.g.*, *United States v. Nelson*, No. 1:08-cr-68, 2023 WL 171145, at *6 (S.D. Ohio Jan. 12, 2023) (difficult conditions faced by many prisoners,

including frequent lockdowns, do not constitute an extraordinary and compelling reasons for release (citing cases)).

The Court finds that Bell's stated reasons, separately or in combination, do not establish the existence of extraordinary and compelling reasons to support a reduction in sentence.

F. **Sentencing Factors (18 U.S.C. § 3553(a))**

But even if Bell had cleared the initial hurdle of demonstrating an extraordinary and compelling reason, his request for compassionate release would still be denied because the relevant § 3553(a) sentencing factors do not support early release. The nature and the circumstances of the charged offense were serious. Bell was responsible for manufacturing and distributing large quantities of narcotics in the Northern District of Ohio. The trafficking of controlled substances is certainly dangerous. *See United States v. Stone*, 608 F.3d 939, 946 n.6 (6th Cir. 2010) ("To be sure, drug trafficking is a serious offense that, in itself, poses a danger to the community." (citations omitted)). Moreover, as the Court recognized at sentencing, Bell has an extensive criminal history, that began when he was only 12 years old, and included adult convictions for carrying a concealed weapon, felonious assault, conspiracy to distribute cocaine, attempted drug trafficking, and aggravated menacing. (Doc. No. 62 (Sentencing Hearing Transcript), at 6–7; *see also* Doc. No. 52, at 7–11 ¶¶ 40–52.) Bell's drug trafficking activities and criminal history continue to support the imposed sentence.

The Court further notes that prior periods of incarceration have failed to impress upon Bell the importance of following the law. For example, in 2005, Bell was sentenced in federal court to a custody term of 84 months for conspiracy to distribute cocaine. (*See also* Doc. No. 52, at 9 ¶ 50.) After he was released, Bell's supervision was revoked due to two new law violations for

aggravated menacing and physical control. (*Id.*) Bell's unwillingness or inability to abstain from dangerous (and illegal) behavior, even after serving a lengthy sentence, leads the Court to question whether he would abide by any conditions of early release.

The Court has considered Bell's prison programming, but it has also considered his disciplinary record in prison, including recent rules violations that only serve to underscore that Bell still struggles with behavior control. It has also considered Bell's concern for his family and his desire to support his children and his mother. Nonetheless, the Court notes that Bell already received substantial consideration at sentencing when the Court varied downward to arrive at the parties' negotiated sentence, which allowed Bell to avoid a life sentence. Accordingly, the Court finds, after considering all of the § 3553(a) factors, that a further reduction in sentence would undermine the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, and protect the public from further crimes of the defendant. Based on these same facts, the Court would also find that defendant continues to pose a danger to the community.

## II.    CONCLUSION

For the foregoing reasons, the Court denies in its entirety defendant's motion (Doc. No. 76) to reduce his sentence.

**IT IS SO ORDERED**.


Dated: August 25, 2025

**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

11